53825. BARKER v. HOUSING AUTHORITY OF CITY OF NEWNAN.
53826. FAVORS v. HOUSING AUTHORITY OF CITY OF NEWNAN.
53827. TOWNS v. HOUSING AUTHORITY OF CITY OF NEWNAN.

MARSHALL, Judge.

The appellants are tenants in the appellee's housing project, built, financed, and operated pursuant to Section 221 (d) (3) of the National Housing Act, 12 USC § 1715 l (d) (3), and defendants in dispossessory proceedings in the State Court of Coweta County. They appeal from the grants of summary judgments in favor of the plaintiff-appellee Housing Authority. These cases raise the issue, apparently of first impression in Georgia, of what constitutes "good cause" which the Housing Authority must show if it wishes to terminate its tenants' leases. See *Milam v. Housing Authority of Columbus,* 129 Ga. App. 188, 189 (199 SE2d 107) (1973) and cits. The material provisions of the leases of all three appellants are identical. The grounds for eviction in each case are set forth hereinbelow. *Held:*

1. In the Barker case (No. 53825), the motion for summary judgment was supported by the affidavit of the

plaintiff's executive director, which alleged substantially that, during the time that Mrs. Barker and her family have been living in the project, they have had a history of bothering others, not abiding by the Authority's rules, and of making no attempt to obey any law; that a report was made by the juvenile authorities to the Housing Authority in 1971 of a molestation incident involving one of Mrs. Barker's sons, who was living with her at the time of this incident; that, in the fall of 1975, the Housing Authority discovered that another of her sons, who had been taken off her lease, had moved back in without her reporting this fact to the Housing Authority, in violation of the terms of the lease; that, in the spring of 1976, Mrs. Barker's two aforesaid sons were convicted of child molestation against a named, six-year-old female child; that these two boys were living with Mrs. Barker at the time of this incident, and the molestation occurred on the Housing Authority premises; that paragraphs 8 (k) and 13 of the lease provide for termination of the lease under these circumstances; that the notice prescribed in said paragraph 13 was given, and the grievance procedure of the Housing Authority was followed; that the hearing panel under the grievance procedure ruled in favor of the Authority, and Mrs. Barker was given notice of this ruling; and that no rent has been paid into the registry of this court.

Mrs. Barker filed an affidavit in support of her motion for summary judgment (the denial of which is not appealed), alleging substantially that the Housing Authority wants her to leave public housing because of trouble caused by the sons; that, because of the behavioral difficulties she had had with her boys, and because the Authority had threatened to evict her, she had worked out an arrangement with James Barker, Sr. (apparently the father of one of her sons) to have her sons move out of the housing project and into his house; that her presentation through her attorney of this arrangement was a settlement offer, which the Housing Authority refused; that her only income is public assistance, and that she cannot afford to live in decent private housing, for which reasons she had always tried, and would continue to try, to do what the Authority had asked and may ask of her.

The plaintiff lessor was justified in finding that lessee Mrs. Barker had failed to fulfill at least the tenant's obligation set forth in subparagraph (k) of paragraph 8 of the lease, viz., "To conduct himself and cause other persons who are on the premises with his consent to conduct themselves in a manner which will not disturb his neighbor's [sic] peaceful enjoyment of their accommodations and will be conductive [sic] to maintaining the project in a decent, safe and sanitary condition." Additionally, we note the following two obligations which were of possible application: "(c) To use the premises solely as a private dwelling for the Tenant and the Tenant's household *as identified in the lease . . .*" (Emphasis supplied.) The son who had moved back in with Mrs. Barker was not named in the lease as an occupant of her unit; "(l) To refrain from illegal or other activity which impairs the physical or social environment of the project."

Paragraph 13 of the lease provides in part: "Termination of the lease: Management shall not terminate or refuse to renew the lease other than for serious or repeated violation of material terms of the lease such as failure to make payments due under the lease *or to fulfill the tenant's obligations set forth in Paragraph 8 hereof,* or for other good causes." (Emphasis supplied.) No reason is shown or apparent why these obligations generally, and those specifically in question, are invalid as a matter of law. Nor is it shown that the defendant's signing of the lease was procured by any fraud or legal disability which prevented her from reading the lease contract before signing it and thereby becoming bound by its terms. Compare *Ga. Mut. Ins. Co. v. Meadors,* 138 Ga. App. 486 (226 SE2d 318) (1976) and cits.

While it is impossible to adjudicate in this opinion all the possible, permissible, good-cause grounds for eviction, we cite language from cases outside Georgia which have construed this requirement, as a guideline for future actions in this regard. "There are tenants who violate the minimum requirements of public housing. The Housing Authority is not required to permit lessees to remain in its project if they are dangerous, destructive, or harmful to others. Public housing projects are usually built in urban

centers. They accommodate large groups of people. In the interests of other tenants and the public, the managing authorities must impose standards of conduct consistent with substantive principles of justice and the minimum requirements that community living imposes upon civilized human beings. Public housing should not be permitted to become a refuge for those who can not or will not adhere to the minimum rules required for man to live decently in community with his fellow man. But every public tenant, however disorderly, evil, or malevolent, is entitled to due process before he is evicted." Ruffin v. Housing Authority of New Orleans, 301 FSupp. 251, 254 (E.D.La., 1969). "[T]his court has . . . expressed its willingness to review the acts of a public housing authority for 'arbitrary, capricious, or discriminatory action on the part of governmental officials constitut[ing] a violation of due process principles.' [Cit.] However, . . . this court will not interfere with the actions of public housing officials unless such review uncovers by clear and convincing evidence some actual arbitrary action by a Housing Authority to the detriment of the parties before [the court];. . . I conclude that defendant may evict its tenants only for 'just cause,' but construe 'just cause' in an essentially negative fashion. The phrase means that public landlords may not evict for arbitrary, discriminatory or otherwise manifestly improper reasons, regardless of whether the evicting authority styles its action as a proceeding under a lease for breach of a covenant thereof, or as a proceeding for recovery of leased premises after termination of the lease. [Cits.] The phrase does not mean that public landlords must justify every eviction to the satisfaction of a federal court. I wish to emphasize that by this holding I in no way mean to establish the federal court system as a grievance committee for tenants of state and local housing authorities. Frivolous challenges to a housing authority's 'just cause' to evict, such as are presented in this case, will in the future be summarily dismissed." Bogan v. New London Housing Authority, 366 FSupp. 861, 867, 868 (D.Conn., 1973).

The pleadings and the showing on the motion for summary judgment reveal no genuine issue of material

fact in Mrs. Barker's appeal. Even if her affidavit supporting her motion for new trial (the denial of which is not appealed) be considered, it does not raise such issues, since the showing by the plaintiff revealed sufficient good cause for eviction. While the Authority may, in its discretion, take all the factors and circumstances of each case in consideration, they are not necessarily required to do so when there exists a clear violation of an obligation of the tenant, such as we have discussed hereinabove. Accordingly, summary judgment was properly granted for the plaintiff Authority.

2. In the Favors and Towns cases (Nos. 53826 and 53827, respectively), the motions for summary judgment were also supported by the affidavit of the plaintiff's executive director, which alleged substantially that these defendants had had their utilities cut off for nonpayment in the past (in Mrs. Favors' case, her gas was cut off once; in Mrs. Towns' case, her "utilities" were cut off twice); that both of these defendants were warned that a second such violation of their leases would result in termination of the leases; that Mrs. Favors' water and electricity were turned off in August, 1976, and Mrs. Towns' gas was turned off in April of 1976, both for nonpayment; that both of these defendants were advised of their rights under the grievance procedure, but failed to exercise those rights; and that demands for possession were made upon both defendants.

Paragraph 5 of both leases provides as follows: "Utilities:. . . Tenant is responsible for all utilities which includes hookup deposits and payment of all utility bills. *Tenant also agrees to keep all utilities on at all time,* including sufficient heat in order to prevent the freezing of piped water." (Emphasis supplied.)

The defendants' argument — to the effect that no harm was shown to have occurred to the plaintiff's housing project, in part because the gas heat was not necessary to prevent the freezing of piped water at the times of year involved — overlooks the fact that they had agreed and covenanted "to keep *all* utilities on at *all* time," which certainly includes the gas and electricity, at any time or season of the year. These government-assisted housing projects were built so that "welfare mothers" like

these appellants would not be forced to live in substandard housing. With the utilities cut off, however, these units thereby become substandard. In order to avoid widespread violations of this and other lease provisions, the appellee must have the power to evict those tenants who repeatedly violate this provision, especially where, as here, they have been warned of the consequences of such violations and have been accorded their necessary due process rights, as mentioned in Division 1 hereinabove, and which were allowed here.

These defendants-appellants were bound by these reasonable provisions of their leases for the same reasons as was the other appellant; therefore, summary judgment was properly granted against them.

*Judgment affirmed. Deen, P. J., and Webb, J., concur.*

ARGUED MAY 4, 1977 — DECIDED JUNE 21, 1977 — REHEARING DENIED JULY 8, 1977 — ▉▉▉▉▉▉▉▉

*Daniel D. Stier, John L. Cromartie,* for appellants.

*Sanders, Mottola, Haugen, Wood & Goodson, Theo D. Mann,* for appellee.